**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION**

| | | |
|---|---|---|
| JAMES THOMAS CRUMBLE, JR. | ) | |
| | ) | |
|     **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO.** |
| | ) | |
| TITAN TIRE CORPORATION OF | ) | |
| UNION CITY | ) | **JURY DEMAND** |
| | ) | |
|     **Defendant.** | ) | |

## COMPLAINT

This case is about race discrimination and retaliation. For his Complaint, Plaintiff James Thomas Crumble, Jr. ("Mr. Crumble" or "Plaintiff") asserts the following allegations and causes of action against Defendant Titan Tire Corporation of Union City. ("Defendant" or "Titan Tire"):

## PARTIES

1. Plaintiff is a citizen and resident of McCracken County, Kentucky. He is a former employee of Defendant Titan Tire.

2. Defendant Titan Tire is a nationwide tire corporation that does business in this State, including at a Union City, Tennessee location. Defendant's principal office is located in Quincy, Illinois. Defendant may be served through its registered agent, Margaret Hawks, 3260 Goodyear Blvd. Union City, TN 38261.

## JURISDICTION AND VENUE

3. This Court has jurisdiction under 28 U.S.C. § 1331 and § 1332.

4. Venue is proper under 28 U.S.C. §1391. All facts giving rise to this case happened within the jurisdiction of this Court where Defendant maintains relevant business operations.

5. This is an action for all available economic damages, compensatory damages, punitive damages, declaratory relief, equitable relief, and injunctive relief (including reinstatement) for violations of 42 U.S.C. § 1981 ("Section 1981") and Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000 (e) ("Title VII").

6. The Notice of Suit Rights from the EEOC has issued and Plaintiff files this lawsuit timely.

## **FACTS**

7. Around April 2020, Mr. Crumble was hired by Defendant to work at the facility's mixing department as a shift supervisor. Plaintiff worked under the direct supervision of Dale Woodard.

8. Mr. Crumble is an African American (Black) male.

9. Dale Woodard is a Caucasian (White) male.

10. During his employment, Plaintiff reported multiple instances of targeted discriminatory behavior concerning Dale Woodard to Human Resources, his Plant Manager, and other agents of Titan Tire.

11. In or about February 2021, Crumble reported to Human Resources Representative Dana Pointer that Woodard was harassing and targeting Plaintiff based on his race. Specifically, Plaintiff reported to Pointer that Woodard "did not treat him like other [White] supervisors." Crumble expressed concerns about retaliation for speaking out about Woodard and his treatment. Pointer assured Crumble that she would investigate his concerns of race discrimination and that there would be a formal investigation of the matter.

12. Upon information and belief, Defendant did not conduct any investigation into his February 2021 race-based complaint. No agent of Defendant interviewed or spoke to Plaintiff regarding the findings of an investigation.

13. Based on subsequent communications, Woodard was made aware that Plaintiff complained about him in or around February 2021.

14. After Plaintiff made the February 2021 complaint to HR agent Pointer, Woodard increased disparate treatment, hostility, and antagonism against Plaintiff on a daily basis during workplace interactions.

15. Additionally, Woodard concocted criticisms a couple of weeks later and issued Plaintiff a written reprimand based on false accusations. Plaintiff refused to sign the write-up due to its factual inaccuracies and false nature. In response, Woodard facetiously told Crumble, "What are you going to do about it, run to HR [again]?

16. The hostile, inequitable, and retaliatory mistreatment continued on a daily basis for a significant time period.

17. Around March 2022, a meeting was held to discuss multiple concerns regarding Woodard's disparate and antagonistic treatment between Plaintiff, Pointer, and Plant Manager Aaron Scott. Plaintiff told Defendant's agents that Woodard was continuing to harass, target, discriminate and retaliate against him based on his race at the meeting. Plaintiff told Defendant's agents his concerns about receiving retaliation in response to his earlier complaint, and he expressed concerns about future retaliation for the content shared during this meeting. Plaintiff pointed out that white employees would "get away with" behavior or misconduct without retribution while Woodard responded to anything Plaintiff did with verbal outbursts, concocted criticism, or discipline.

18. During the March 2022 meeting, Defendant's agents assured Crumble that they would investigate his claims of discrimination and stated that the company would be in contact with Crumble to discuss further or reveal its findings.

19. Upon information and belief, Defendant did not investigate or do any action in response to the complaints raised at the March 2022 meeting. No agent of Defendant contacted or spoke to Crumble regarding his race-based complaint or its findings after the meeting in March 2022.

20. Again, following the March 2022 complaint, Woodard responded antagonistically. Specifically, Woodard began referring to Plaintiff as "boy" during workplace interactions. He also escalated hostile, unfair, and antagonistic communications with Plaintiff on a daily basis while White employees received fair and respectful treatment from Woodard.

21. In or about September 2022, after Plaintiff was yelled at by Woodard regarding a workplace meeting and his need to miss work due to his wife having intensive surgery, Plaintiff went to Human Resources agent Laurie Alexander to report the situation.  At the meeting, Crumble raised race-based concerns and Defendant's refusal to address his prior reports of discrimination against Woodard – which he believed empowered Woodard to escalate his hostilities towards him without consequence.  Woodard responded in front of Alexander and Crumble that, based on what Plaintiff said about disparate treatment, he intends to issue Crumble a write-up for insubordination and intentionally missing a morning meeting – despite the fact that Plaintiff informed Woodard of the legitimate reason for his absence at the meeting.

22. Shortly thereafter, Woodard issued Plaintiff a write-up for insubordination and missing the morning's meeting. Woodard informed Plaintiff that if he did not sign the write-up or went back to HR to complain that he would be "doing so at his own risk."

23. During his week off to take care of his wife after surgery, Plaintiff made a complaint to Titan Tire's Grievance Hotline. In this complaint, Plaintiff alerted agents of Defendant that he was being targeted, discriminated, and retaliated against based upon his race by Dale Woodard.

24. Agents of Defendant's Grievance Hotline confirmed receipt of Plaintiff's complaint and informed that someone would be in contact with Plaintiff to conduct their investigation. Following this call, no agent of Defendant contacted or spoke directly to Crumble regarding his race-based complaint given to Defendant's Grievance Hotline in or about the beginning/ middle of September 2022. To Crumble's belief and information, no agent of Defendant conducted any investigation into his race-based complaint given to Defendant's Grievance Hotline in or about the beginning/ middle of September 2022.

25. After the series of issues in September 2022, hostilities and harassment escalated from Woodard and other agents of Defendant.

26. On or about September 20, 2022, Crumble reported to HR that a hangman's noose had been located and photographed by an employee in the area known as "Roller Die 10" at the Titan Tire facility.

27. Crumble alerted Defendant's HR that the employee who found/saw the hangman's noose begged him to keep his/her identity anonymous out of fear of retaliation from agents of Defendant. Plaintiff also expressed "serious safety concern for the black employees" based on the hangman's noose being present.

28. Agents of Defendant disregarded Crumble's concerns of safety and proceeded with closing the investigation into the hangman's noose. Plaintiff found Defendant's dismissal of this issue offensive and believed said conduct to expand an already racially hostile work environment against Black employees.

29. On or about September 23, 2022, an HR agent sent Crumble an email providing a copy of the final investigative report and notice that the investigation would be closed.

30. Crumble responded to the September 23, 2022 email with two separate email responses on September 25, 2022 and September 26, 2022. In the September 25, 2022 email, Crumble alerted the HR agent (Alexander) that the investigative report was not "worded correctly" as it contained inaccurate details regarding the information he relayed to her. In the September 26, 2022 email. Crumble stated to Alexander that he would "type my [Crumble] statement" so that there would be "no confusion and the investigation can be as accurate as possible."

31. Less than 24 hours later, HR and Woodard terminated Plaintiff. During the termination meeting, the actions and comments of Woodard and Alexander clearly indicated that the real motivation for the termination was retaliatory animus in response to Crumble's reports of race-related discrimination and retaliation.

32. At the meeting, Defendant's agents asserted that he was fired for violating Titan Tire's Zero Tolerance policy regarding cell-phones in the workplace. During Plaintiff's employment, Caucasian employees engaged in policy violations that far exceeded and were more serious than the alleged-infraction that Defendant claims motivated its termination decision concerning Plaintiff; but those employees received no discipline or less severe sanctions from superiors and management at Titan Tire. Similarly situated Caucasian employees who engaged in similar, or more grave policy violations than those alleged against Plaintiff did not suffer similar adverse employment acts.

33. Titan Tire's claimed reason for ending Plaintiff's employment is a pretext for discrimination and unlawful retaliation.

34. Defendant acted willfully, maliciously, and with reckless indifference to Plaintiff's protected right to be free from a workplace of discriminatory conduct and retaliatory actions on the basis of race.

35. As a result of these incidents, Mr. Crumble has suffered emotional, financial, and mental harm as a result of Defendant's actions.

## CAUSES OF ACTION

**Retaliation, Retaliatory Harassment, Hostile Work Environment, Race Discrimination
Title VII and Section 1981**

36. Plaintiff incorporates by reference all of the preceding paragraphs of the Complaint.

37. Based on the conduct described in this Complaint, Plaintiff complained to Defendant and its agents on multiple occasions about unlawful discrimination, hostile work environment, and retaliation in violation of the aforementioned federal and state laws – including the day of his termination.

38. In response to the protected acts, Defendant and its agents responded with increased hostilities, harassment, and ultimately terminated Plaintiff based on his performance of said acts. Defendant's retaliatory conduct described in this Complaint was substantially motivated by Mr. Crumble's race and his opposition to unlawful conduct.

39. The race-based and retaliatory harassment targeted at Plaintiff and others in his protected class was persistent, severe, and pervasive and contributed to a workplace atmosphere that was detrimental and threatening to Black employees.

40. The treatment and termination of Plaintiff was less favorable workplace treatment than that afforded to his white peers.

41. Defendant's conduct has harmed and caused damage to Mr. Crumble in a variety of ways.

**<u>Relief Requested</u>**

Mr. Crumble respectfully requests:

1. That process issue and be served upon Defendant, and that it be directed to answer this Complaint within the time period prescribed by the law;

2. That this case be set for trial and that a jury be empaneled to decide the merits and damages;

3. Monetary award of damages for back pay, front pay, and all other available economic relief under the aforementioned federal and state laws.

4. That Mr. Crumble be awarded judgment and compensatory damages exceeding $500,000.00 for emotional distress, pain and suffering, inconvenience, embarrassment, humiliation, mental anguish and stress, and outrage;

5. That Mr. Crumble be awarded punitive damages of $250,000.00 or an amount to be determined at trial.

6. That Mr. Crumble be awarded attorneys' fees and expenses;

7. That Mr. Crumble be awarded pre-judgment interest;

8. That all costs be taxed against Defendants; and

9. That Mr. Crumble be awarded all legal or equitable relief to which he may be entitled.

<div style="margin-left: 40%;">

Respectfully Submitted,

/s Brian C. Winfrey
Brian Winfrey, TN Bar No. 02576
THE WINFREY FIRM
613 Woodland St.
Nashville, Tennessee 3726
(615) 601-1276
brian@thewinfreyfirm.com

</div>